# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

BRIAN HUNTER,

                      Plaintiff,

    vs.                                    9:13-CV-725
                                          (GLS/ATB)

ERIC T. SCHNEIDERMAN, *et ano.*,

                      Defendants.

---

BRIAN HUNTER, Plaintiff pro se
BRUCE J. BOIVIN, AAG, Attorney for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Gary L. Sharpe, Chief United States District Judge.

In this civil rights complaint, plaintiff alleges that he was denied due process in conjunction with his involuntary commitment to the Central New York Psychiatric Center ("CNYPC") as a sex offender requiring civil management, pursuant to Article 10 of the N.Y. Mental Hygiene Law ("MHL"). (Compl.) (Dkt. No. 1). Plaintiff also claims that the defendants violated a federal court preliminary injunction in confining him past his mandatory release date. Plaintiff seeks a substantial amount of money damages. (Compl. at CM/ECF p.6).

Presently before the court is the defendants' motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1)

and (b)(6). (Dkt. No. 18). Plaintiff has responded in opposition to defendants' motion, and defendants filed a reply. (Dkt. Nos. 21, 24). For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint.

## I.    **Motion to Dismiss**

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents

incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment). Finally, the court may consider matters of which judicial notice may be taken, such as public filings and administrative decisions. *See Kavowras v. New York Times, Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (citing *inter alia County Vanlines, Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 154 (S.D.N.Y. 2002) (taking judicial notice of NLRB decisions)). *See also Combier-Kapel v. Biegelson*, 242 F. App'x 714, 715 (2d Cir. 2007) (taking judicial notice of the Impartial Hearing Officer's decision as well as certain other documents in the administrative record of an IDEA case); *In re Howard's Exp., Inc.*, 151 F. App'x 46, 48 (2d Cir. 2005) (taking judicial notice of Bankruptcy Court docket); *Caro v. Fidelity Brokerage Services, LLC*, No. 3:12-CV-1066, 2013 WL 3299708, at *6 (D. Conn. July 26, 2013) (taking judicial notice of record in prior litigation between the same parties).

## II.   **Background of Relevant Caselaw**

In order to better understand the plaintiff's claims, it is necessary to discuss the background of the specific cases he relies upon for his due process challenge. Effective on April 13, 2007, the New York Sex Offender Management and Treatment Act ("SOMTA"), codified in Article 10 of the MHL, authorizes the "civil management" of certain sex offenders after completion of their prison terms, parole terms, or other periods of state custody. *Mental Hygiene Legal Service v. Cuomo ("MHLS-II")*, 785 F.

Supp. 2d 205, 209 (S.D.N.Y. 2011).[1] This "civil management" is based upon the danger to society that is posed by recidivist sex offenders.[2] *Id.* "Civil management" can include placement and treatment in a secure facility, akin to incarceration as well as other "strict and intensive supervision." SOMTA provides for procedures to be followed when an individual who has been convicted of a sex offense is nearing the end of his sentence of incarceration or other state custody in order to determine whether civil commitment is necessary.

MHLS filed a "pre-enforcement" facial challenge to certain provisions of the SOMTA, only one of which is relevant to this case. *Id.* MHL Section 10.06(k) mandates involuntary civil detention, pending a commitment trial, based upon a finding at a probable cause hearing that the individual may have a mental abnormality, without a finding of current dangerousness. *Id.* In general, the MHL provides that when a convicted sex offender nears release from confinement or parole, a "multidisciplinary staff" provides a "preliminary review" to determine whether the individual should be referred for further evaluation. *MHLS-II*, 785 F. Supp. 2d at 211 (citing MHL § 10.05

---

[1] Plaintiff mis-cites the *MHLS* cases. He has mistakenly stated that these cases are from the Northern District of New York. (Compl. at 4). However, these cases were brought and decided in the Southern District of New York, and this court will use the proper citations.

[2] In *Mental Health Legal Services v. Spitzer* ("*MHLS-I*"), No. 07 Civ. 2935, 2007 WL 4115936 (S.D.N.Y. Nov. 16, 2007), the court elaborated upon the purposes for SOMTA, stating that the New York Legislature found that recidivistic sex offenders pose a danger to society that should be addressed through comprehensive programs of treatment and management, and that some sex offenders have mental abnormalities that predispose them to engage in repeated sex offenses. 2007 WL 4115936 at *1 (citing MHL §§ 10.01(a), 10.01(b)). Treatment of these offenders begins during their incarceration on the criminal charges, but the legislature found that the treatment should continue when that incarceration comes to an end, and that in "extreme cases," confinement will need to be extended by civil process in order to provide treatment while protecting the public from recidivist conduct. *Id.*

4

(d)). If the staff determines that additional evaluation is necessary, a case review team ("CRT"), consisting of three individuals, at least two of whom are mental health professionals, must determine whether that person (the "respondent") requires additional civil management. *Id.* (citing MHL § 10.06(a)). The respondent is afforded notice of the referral. *Id.* (citing MHL § 10.05(e)).

The CRT determines whether the respondent suffers from a mental abnormality and is either a "dangerous sex offender requiring confinement," or "a sex offender requiring strict and intensive supervision." *Id.* at 212 (citing MHL §§ 10.03(1), 10.03(q), 10.03(e), 10.03(r)). If it appears that the individual will be released prior to the time the CRT makes its determination, the Attorney General ("AG") is authorized to file a "securing petition," preventing the individual's release from custody while the review is ongoing. *Id.* (citing MHL § 10.06(f)).

If the CRT determines that the individual requires additional "civil management," the AG files a "sex offender civil management petition" in New York State Court. The court must conduct a hearing to determine whether there is probable cause to believe that the individual requires civil management. *Id.* (citing §§ 10.06(a), (g), and (k)). The hearing must commence within 72 hours of the anticipated release date unless the individual consents or the AG shows good cause for the delay. MHL §§ 10.06(g), (h). Upon the court's finding of probable cause, SOMTA provides that the individual must be committed to a secure treatment facility pending resolution of a full commitment trial. MHL § 10.06(k). The statute provides that the trial must begin within 60 days of the probable cause hearing. MHL § 10.07(a).

5

In *MHLS-1*, the court granted a preliminary injunction, prohibiting the enforcement of MHL § 10.06(k), without an individualized finding that the individual was "dangerous," and that no condition or combination of conditions of supervision could allow the respondent to be at liberty pending the final adjudication. *See* 2007 WL 4115936, at *15. The court in *MHLS-II* found that section 10.06(k) was facially unconstitutional and granted a permanent injunction, with the same conditions.[3] The court must note that neither[4] court invalidated the section altogether as plaintiff seems to argue. Rather than prohibiting use of the section altogether, the court specifically enjoined enforcement of section 10.06(k) "***absent a specific, individualized finding of probable cause to believe that a person is sufficiently dangerous to require confinement, and that lesser conditions of supervision will not suffice to protect the public during the pendency of the proceedings.***"[5] *Id.*

The court notes that although the Second Circuit affirmed the preliminary injunction, it later reversed the court's order granting a permanent injunction and remanded the case to the district court to determine whether MHLS had standing to

---

[3] Although plaintiff mentions both *MHLS* cases, only the preliminary injunction had been issued at the time of plaintiff's probable cause finding. The permanent injunction was not issued until 2011.

[4] The judge who issued the preliminary injunction in *MHLS-I* was Judge Gerard E. Lynch. Judge Lynch was subsequently appointed to the Second Circuit Court of Appeals, and the case was assigned to Judge Deborah A. Batts, who issued the permanent injunction in *MHLS-II* in 2011.

[5] In making this determination, the court likened the analysis under the MHL to the section of the Bail Reform Act which provides for pretrial detention of a criminal defendant upon a finding of probable cause to believe that the defendant has committed the crime, and that the individual poses a danger to the community that no conditions or combination of conditions of release will prevent. *See* 785 F. Supp. 2d at 225 (citing *United States v. Salerno*, 481 U.S. 739, 750 (1987)). Probable cause alone will not suffice. *Id.*

6

pursue the action on behalf of its clients, who were respondents in the MHL proceedings.[6] *MHLS v. Schneiderman*, 472 F. App'x 45 (2d Cir. 2012). On remand, the District Court found that MHLS did not have standing to pursue the respondents' claims and dismissed the action. *MHLS v. Cuomo* ("*MHLS-III*"), No. 07 Civ. 2935 (DAB), 2014 WL 1345891 (S.D.N.Y. Mar. 31, 2014).

## III. Facts and Contentions

Plaintiff alleges that he was arrested on July 15, 1989, was subsequently convicted, and was sentenced to serve ten to twenty years of incarceration, with a maximum release date of July 10, 2009. Plaintiff alleges that instead of being released on July 10, 2009, he was held in "Oneida County," based upon a "petition" filed by an Assistant Attorney General ("AAG"). (*Id.*) Plaintiff alleges that holding him beyond his maximum release date violated the 5th and 14th Amendment due process clauses of the United States Constitution as well as the preliminary injunction issued in *MHLS-I*.[7] Plaintiff stresses that the injunction prohibited the AG from "enforcing" section 10.06(k), which deemed him "already 'dangerous' . . . ." (*Id.* at 4). Plaintiff also alleges that the defendants' conduct violated Equal Protection. (*Id.*)

Plaintiff takes an overly simplified view of the *MHLS* rulings and does not

___

[6] The standing issue arose from the Second Circuit's decision in *Disability Advocates, Inc. v. New York Coalition for Quality Assisted Living, Inc.*, 675 F.3d 149 (2d Cir. 2012). The issue was whether MHLS could establish any of the "indicia of membership" required for a membership organization to assert associational standing. *Id.* The dismissal based upon standing does not change the court's analysis of the merits of the claims, but the permanent injunction is no longer in effect.

[7] Although plaintiff also mentions the permanent injunction in *MHLS-II*, the court notes that only the preliminary injunction could have been violated because the permanent injunction was not issued until 2011.

consider the facts of his own case, when he argues that the AG violated the injunction as well as the constitution by enforcing section 10.06(k). The plaintiff relies heavily on the decisions in the *MHLS* cases, and he seeks only damages for the alleged violations. Plaintiff also mentions a case, cited by the court in the *MHLS* cases, interpreting statutes authorizing pretrial detention as well as a case discussing the commitment of a defendant found not guilty by reason of insanity. (Compl. at 6) (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992); *United States v. Salerno*, 481 U.S. 739 (1987)).

Defendants have submitted to the court documents that were filed in plaintiff's MHL Article 10 proceeding, and defendants argue that the complaint should be dismissed on various bases, some unrelated to the merits of the due process claim, including the statute of limitations, the lack of personal involvement, and absolute immunity. Defendants also argue that plaintiff has failed to state a claim on the merits of this action, that he received due process, and that he is properly confined under the MHL. The following facts are taken from the defendants' exhibits of which this court takes judicial notice.

Defendants' Exhibit A is the AAG's "Petition for Civil Management" filed in plaintiff's case. (Boivin Decl. Ex. A) (Dkt. No. 18-1 at 4-44). Attached as Exhibit A to the AAG's Petition, is the report of Katrina Colistra, Psy. D., the licensed psychologist who interviewed plaintiff. (Dkt. No. 18-1 at 21-40). Defendants' Exhibit B is a copy of the Order to Show Cause, signed by Oneida County Supreme Court Justice Bernadette Romano, dated June 23, 2009, scheduling the probable cause hearing for July 13, 2009 "or any adjourned date" at the Onondaga County Courthouse. The order also

authorized plaintiff's continued detention pursuant to MHL § 10.06(h), pending the probable cause hearing. (Dkt. No. 18-1 at 46-47). Exhibit C is a copy of Monroe County Supreme Court Justice Anne Marie Taddeo's decision, dated September 25, 2009, after plaintiff filed a demand for removal to the county of his conviction, finding probable cause in plaintiff's case. Exhibit D is an Order, dated June 20, 2011, directing plaintiff's civil commitment after trial and dispositional hearing. (Dkt. No. 18-1 at 54-58).

The AG's petition for civil management is dated June 23, 2009 and states that plaintiff is a detained sex offender at Mid-State Correctional Facility ("Mid-State"), having been convicted of three counts of Attempted Rape, First Degree and Attempted Sex Abuse, First Degree, "along with other convictions which were sexually motivated." (Dkt. No. 18-1 at 7). Although in 1989, plaintiff initially received indeterminate, consecutive sentences of twenty-five to fifty-two years incarceration, with the sentencing court recommending that he "never be paroled," the sentence was reduced under the New York Penal Law to twenty years. (*Id.* at 9). Plaintiff's case was referred to a CRT on April 2, 2009 for evaluation. (*Id.* at 16). The CRT served the AAG and plaintiff with its determination that plaintiff was a sex offender in need of civil management. (*Id.* at 17).

The AAG stated that in May of 2000 and December of 2002, plaintiff refused to participate in the sex offender program. (*Id.* at 10). His December 2002 refusal to participate in the program followed his removal from the program in November of 2002, while he was incarcerated at Gowanda Correctional Facility. (*Id.*) Plaintiff did

complete a two-month sex offender counseling program in 1998, but there was no indication that plaintiff completed aggression replacement training or alcohol or drug treatment while he was incarcerated. (*Id.*)

The report details the specific facts of plaintiff's crimes, which this court will not repeat except to say that the crimes were clearly sexual in nature. At the time of his arrest on the present charges, plaintiff was twenty-one years old and had amassed quite a prior record of arrests and convictions. (*Id.* at 11). His prior sexually-related crimes began when he was fourteen years old and involved molesting girls in the high schools he attended, causing him to be removed from these schools. (*Id.*)

Dr. Colistra spent five hours with plaintiff in order to provide her Article 10 evaluation of whether plaintiff was a sex offender requiring civil management. (*Id.* at 12). Her report is dated May 22, 2009. (*Id.* at 21). In addition to the personal interview, Dr. Colistra reviewed plaintiff's criminal history, records maintained by the Department of Correctional Services, the New York State Division of Criminal Justice Services, the New York State Division of Parole, and the Office of Mental Health ("OMH"). The petition discusses Dr. Colistra's report, which found "to a reasonable degree of professional certainty," that plaintiff met the criteria for the following mental disorders: "Axis I, Paraphilia, Not Otherwise Specified (NOS) (Non-consent); Sexual Sadism (Provisional); on Axis II, anti-social Personality Disorder (ASPD), with Paranoid and Psychopathic features." (*Id.* at 12, 31-36).[8]

---

[8] The report itself contains a detailed discussion of these mental abnormalities. (Dkt. No. 18-1 at 31-36).

The AAG then discussed the "risk" factors associated with these mental abnormalities, including the results of various tests to determine sexual recidivism among sex offenders that were outlined by Dr. Colistra in her report. (*Id.* at 15-16, 36-37). Dr. Colistra also evaluated "situational considerations," including the fact that, if released, plaintiff would not have any post-release supervision. (*Id.* at 38). Dr. Colistra concluded that plaintiff's mental abnormalities would affect his emotional, cognitive, and volitional capacity such that he would be predisposed to the commission of sexual offenses, and that he would have difficulty controlling such conduct. (*Id.* at 40). Dr. Colistra also concluded that plaintiff should be civilly committed because she knew of no "lesser-restrictive" measure at that time, which would meet the plaintiff's needs or protect the safety of the community. (*Id.*) The AAG requested an order*, inter alia,* appointing counsel for plaintiff, an order producing plaintiff for a probable cause hearing, and an order authorizing the Department of Correctional Services[9] to hold plaintiff beyond his release date pursuant to MHL § 10.06(h),[10] until the probable cause hearing could be held. (*Id.* at 17-18).

Justice Romano issued the order to show cause on the same date as the petition, directing that the probable cause hearing be held on July 13, 2009, and that after a determination of eligibility, plaintiff would be appointed MHLS counsel. (*Id.* at 46).

---

[9] The Department of Correctional Services is now known as the Department of Corrections and Community Supervision ("DOCCS").

[10] The court notes that, contrary to plaintiff's claim that being held "beyond his release date" was unconstitutional, section 10.06(h) was never challenged in the *MHLS* cases. The only section that was challenged relevant to plaintiff's case that was challenged was section 10.06(k), which only took effect **after** the court found probable cause.

Justice Romano ordered that plaintiff be produced on the day set for the hearing, that he submit to a psychiatric examination, and that he be confined pending the hearing pursuant to section 10.06(h). (*Id.* at 47).

Plaintiff filed a notice of removal to Monroe County on June 24, 2009.[11] (*Id.* at 49). Counsel was appointed for plaintiff, and the AAG opposed the removal on June 26, 2009, asking that the case remain in Oneida County. (*Id.*) Plaintiff's counsel filed an opposition to the AG's papers. On July 6, 2009, Justice Tormey granted plaintiff's motion to remove and directed transfer of the plaintiff's case to the Supreme Court in Monroe County. The probable cause hearing was held before Justice Taddeo on September 25, 2009. (*Id.* at 50). Plaintiff was present with counsel from MHLS, and defendant Williams represented the AG's Office. (*Id.*)

Justice Taddeo issued an order, stating that she delivered her decision "from the bench." She found that, after hearing the testimony of Dr. Colistra and reviewing "submitted evidence," there was probable cause to believe that plaintiff was a sex offender requiring civil management under Article 10. (*Id.*) Justice Taddeo found that plaintiff was "sufficiently dangerous to require pre-trial detention, and that no less-restrictive alternative to [OMH] or Department of Correctional Services confinement will adequately protect the public pending the trial of this matter." (*Id.*) Justice Taddeo ordered plaintiff committed to a secure treatment facility designated by the Commissioner of Mental Health. (*Id.*) The order states that the date of the trial was

---

[11] This court is citing to Justice Taddeo's decision finding probable cause. (Def.s' Ex. C) (Dkt. No. 18-1 at 49-51).

"TBD."[12] (*Id.* at 50-51). The order specifically stated that plaintiff was not to be released pending the completion of the trial. (*Id.* at 51). Justice Taddeo issued the written order on September 25, 2009, the same day as the probable cause hearing. (*Id.*)

Justice Taddeo originally scheduled the trial for January 11, 2010, but on November 3, 2009, the AAG moved for an order for release of plaintiff's juvenile records from the Family Court Clerk, and plaintiff's counsel opposed that motion.[13] (Def.s' Ex. D) (Dkt. No. 18-1 at 55). On December 16, 2009, Justice Taddeo granted the AAG's motion. On January 5, 2010, plaintiff's counsel moved "ex parte" for the appointment of a "consulting expert." The AAG opposed the motion, and Justice Taddeo denied the motion on February 26, 2010. (*Id.*) On February 13, 2010, acting pro se, plaintiff moved for release on bail, for a "writ of habeas corpus, and for "removal of counsel." (*Id.* at 56). The AAG opposed the motion, and Justice Taddeo heard oral argument. Plaintiff was produced for oral argument, and his attorney also appeared. The court denied the motion from the bench on March 9, 2010. (*Id.*) On August 21, 2010, plaintiff's counsel moved for the appointment of a psychiatric examiner pursuant to MHL § 10.06, and the court granted the motion on November 1, 2010. (*Id.*)

A jury trial was held on March 18, 2011, and continued through March 23, 2011. After testimony and "admitted evidence," the jury determined "by clear and convincing

---

[12] "To Be Determined."

[13] These facts are taken from Justice Taddeo's "Order for Confinement after Trial and Hearing." (Dkt. No. 18-1 at 54-58).

evidence," that the plaintiff was a detained sex offender who had a mental abnormality, predisposing him to commit sex offenses, and who has serious difficulty in controlling such conduct, as those terms are defined in the MHL. (*Id.*) The court held a "dispositional" hearing on June 6, 2011 and ordered the preparation of a Strict and Intensive Supervision and Treatment ("SIST") investigation. The result of the investigation showed that "Parole, OMH, [and] OAG did not support SIST (which would have involved plaintiff's release and strict supervision). (*Id.* at 56-57).

All parties appeared for the dispositional hearing. The only issue to be determined was whether plaintiff required confinement or whether he could be released under strict supervision. (*Id.*) On June 20, 2011, after hearing oral argument, Justice Taddeo issued a written decision, stating her determination by clear and convincing evidence that plaintiff should be civilly committed because of his mental abnormality, which involved such a strong disposition to commit sex offenses and his inability to control his behavior, making him likely to be a danger to others if not confined. Plaintiff was ordered confined and treated. However, he was also informed of his right to be provided yearly notice of his right to petition for discharge and his right to petition anytime for release under a regimen of SIST. (*Id.* at 58).

## IV.   **Absolute Immunity/Personal Involvement**

### A.   **Legal Standards**

It is well-settled that prosecutors enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers

14

virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the Grand Jury).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502-503 (citation omitted). The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006). It has also been held that a prosecutor is entitled to absolute immunity for his or her decision not to prosecute, regardless of the motivation for that decision. *Schloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).

Prosecutorial immunity is extended to government attorneys who initiate civil suits or administrative proceedings. *Cornejo v. Bell*, 592 F.3d 121, 127-28 (2d Cir. 2010). An agency official who decides to institute an administrative proceeding is entitled to prosecutorial immunity because this decision is "'very much like the prosecutor's decision to initiate or move forward with a criminal prosecution.'" *Id.* at 127 (citing *Butz v. Economou*, 438 U.S. 478, 515 (1978)). *See also Contreras v. Perimenis*, No. 13-3337, __ F. App'x __, 2014 WL 1409495, at *1 (2d Cir. April 14, 2014) (AAG afforded absolute immunity when sued in his capacity as a government advocate, prosecuting child welfare cases).

Notwithstanding the availability of absolute immunity, in order to recover

damages in a civil rights action, plaintiff must allege a defendant's direct or personal involvement in the alleged constitutional deprivations. *Farrell v. Burke*, 449 F.3d 470, 474 (2d Cir. 2006). There are various ways to establish personal involvement articulated in *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) (a supervisory official is said to have been personally involved if that official directly participated in the infraction; if after learning of a violation through a report or appeal, he or she failed to remedy the wrong; if he or she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue; or if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event).

## B. Application

In this case, plaintiff is seeking only damages against two AG defendants. Any suit for damages against these defendants is barred by absolute immunity because the AG was initiating a proceeding against plaintiff on behalf of the government. Thus, both defendants are entitled to absolute immunity from this action for damages. In addition, only one of the two named defendants was personally involved in the alleged violation of which plaintiff complains. While AAG James Williams signed the plaintiff's Petition for Civil Management, Eric Schneiderman is the current AG who was not even in office at the time in question.[14] Thus, the complaint may be dismissed

---

[14] Andrew Cuomo was the AG in office at the time of plaintiff's scheduled release from his criminal sentence. In plaintiff's response to the motion to dismiss, he continues to state that AG Schneiderman should be liable. (Dkt. No. 21). The court notes that for purposes of injunctive or declaratory relief, the supervisory official who has the authority to bring about the specific injunctive relief plaintiff seeks, is an appropriate defendant. *See Kuck v. Danaher*, 822 F. Supp. 2d 109, 137-40

as against the existing defendants, without leave to amend to add other attorney general defendants in their individual or official capacity who would be equally immune to suit.[15]

## V.    **Due Process**[16]

### A.    **Legal Standards**

To begin a due process analysis, the court must determine whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges, and then determine whether the defendants deprived plaintiff of that liberty interest without due process. *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001); *Bedoya v. Coughlin*,

---

(D. Conn. 2011) (discussing proper defendants for various types of relief). Likewise, Eleventh Amendment immunity does not preclude suits for prospective declaratory and injunctive relief against state officers in their "official" capacities, while the Eleventh amendment does prohibit suits for damages against those officers in their official capacities. *Neroni v. Zayas*, No. 3:13-CV-127, 2014 WL 1311560, at *7 (N.D.N.Y. March 31, 2014) (citing *inter alia Ex Parte Young*, 209 U.S. 123 (1908)). Plaintiff has confused the *MHLS* case which was a pre-enforcement action for declaratory and injunctive relief, with an action for damages against an official in his or her "individual capacity."

[15] To the extent that he is attempting to sue the defendants in their official capacities for damages, the Eleventh Amendment would also bar the action. The state itself cannot be sued under section 1983. *Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir. 1995) (citing *Will v. Michigan Department of Police*, 491 U.S. 58, 71 (1989)). This is true whether the court is considering Eleventh Amendment immunity or a statutory interpretation of section 1983. *Id.* at 815 n.3. An action against state officers in their official capacities is tantamount to an action against the state. *Yorktown Medical Laboratory, Inc. v. Perales*, 948 F.2d 84, 87 & n.1 (2d Cir. 1991) (citations omitted). Thus, the Eleventh Amendment would have precluded a claim for damages under section 1983 against defendants in their official capacities.

[16] Plaintiff also claims that his Fifth Amendment rights were violated by defendants in this action. As defense counsel points out, the Fifth Amendment is applicable to federal actors, not state actors. *Snow v. Village of Chatham*, 84 F. Supp. 2d 322, 326 (N.D.N.Y. 2000) (citing *Brock v. North Carolina*, 344 U.S. 424, 426 (1953)). *See also Ahlers v. Nowicki*, No. 9:12-CV-539, 2014 WL 1056935, at *4 (N.D.N.Y. Mar. 18, 2014). Plaintiff in this case combines the Fifth Amendment with the Fourteenth Amendment "Due Process" clauses. To the extent that plaintiff is attempting to raise the Fifth Amendment as against the state defendants, that claim must be dismissed with prejudice.

91 F.3d 349, 351 (2d Cir. 1996).  The parties do not question that plaintiff has a liberty interest in remaining free from involuntary commitment to a mental hospital. *See Vitek v. Jones*, 445 U.S. 480, 493 (1980).  The issue is whether he was afforded the appropriate procedural safeguards in conjunction with his civil commitment.

### B.    Application

Although this action may be dismissed on the defense of absolute immunity alone, the court will discuss the plaintiff's due process claim because the complaint also fails to state a claim on the merits of this issue.  The due process requirements regarding Article 10 commitment and treatment have been extensively discussed in the *MHLS* line of cases.  The procedural protections afforded by the statute have been stated in this report above.  The only problem, relevant to plaintiff's case, with the statute thus far has been found in section 10.06(k), which allowed detention of the individual ***after*** a probable cause hearing, but before a full trial, without an "individualized" finding that the individual was dangerous.

However, it is clear from the orders signed by the state court judges in this case that there was an individualized finding of dangerousness.  As stated above, after the probable cause hearing, Justice Taddeo specifically found that plaintiff was "sufficiently dangerous" to require pre-trial detention, and that no less restrictive alternative would protect the safety of the public from the risk that plaintiff would re-offend if released. (Dkt. No. 18-1 at 50).  Thus, neither the constitution, nor the preliminary injunction was violated in plaintiff's case.  Section 10.06(k) was never "improperly" applied to detain plaintiff.

## VI.  Opportunity to Amend

### A.  Legal Standards

In addition to the requirement that pro se complaints must be "liberally

construed," the court should generally not dismiss without granting leave to amend at

least once. *Contreras v. Perimenis*, 2014 WL 1409495 at *1 (citing *Cuoco v.

Moritsugu*, 222 F.3 99, 112 (2d Cir. 2000)).  The court may deny leave to amend when

the amendment would be futile. *Id.* (citing *Pangburn v. Culbertson*, 200 F.3d 65, 70-71

(2d Cir. 1999)).

### B.  Application

There is no basis in this case for the court to allow the plaintiff the opportunity to

amend.  As stated above, there are no defendants who plaintiff could add who would be

subject to a suit for damages.  Plaintiff's response to defendants' motion to dismiss

repeats the same claims made in his complaint.

In *Roache v. Attorney General's Office*, No. 9:12-CV-1034, 2013 WL 5503151,

at *13-15 (N.D.N.Y. Sept. 30, 2013),[17] Magistrate Judge Peebles recommended that the

court dismiss a very similar action for damages as against the AG defendants in both

their official and their individual capacities, based on absolute immunity, lack of

personal involvement, and Eleventh Amendment immunity.  However, Judge Peebles

also held that, liberally construed, plaintiff's claims in *Roache* gave rise to a

constitutional due process claim regarding the delay in holding plaintiff's hearings

---

[17] District Court Judge Lawrence Kahn adopted Judge Peebles's Report-Recommendation in its
entirety. 2013 WL 5503151, at *1-3.

under the requirements contained in the MHL.  Judge Peebles recommended dismissing the entire action, but affording "plaintiff an opportunity to amend his complaint to name a defendant that may be properly sued for this alleged violation, ***if such an individual exists***." *Id.* at *15 (emphasis added).

Even a liberal interpretation of the complaint in this case would not allow the inference of any due process claim, relating to the state statute.  First, plaintiff does not make any such allegations.  He focuses upon the allegedly improper application of section 10.06(k).  While it is true that the plaintiff's commitment trial was held beyond the sixty-day time limit contained in the MHL, the reasons for the delay are apparent from Justice Taddeo's order, issued after the trial.  The probable cause determination was filed on September 25, 2009, and it is clear that trial was set for January 11, 2010 "after further conferences" with the parties. (*Id.* at 55).

In November of 2009, the parties litigated the issue of the release of plaintiff's juvenile records, and on January 5, 2010, plaintiff's counsel moved for a "consulting expert." (*Id.*)  Plaintiff himself moved for release on bail and removal of counsel, which the court denied after oral argument. (*Id.* at 56).  In August of 2010, plaintiff's counsel moved for appointment of a psychiatric examiner, and the court did not render its decision granting the relief until November of 2010. (*Id.* at 55-56).  The trial was ultimately held in March of 2011.

It is clear that any delay in plaintiff's trial was caused either by the Judge, the AG, plaintiff, or plaintiff's attorney.  None of these individuals is a proper defendant for the assessment of damages, and any delays had nothing to do with the statute or its

application, but rather with scheduling issues and motion practice. The issue of plaintiff's possible release was litigated, and the court denied bail. Thus, even if the delay in plaintiff's trial were a separate issue as the court found in *Roache*, there is no defendant who plaintiff could add who would be subject to a suit under section 1983 for damages.

To the extent that plaintiff would name his attorney as a defendant, he or she would not have acted under color of state law, even if the attorney was appointed by the court and was an MHLS employee. Public defenders, legal aid attorneys, and private counsel, representing an individual, do not act under color of state law, as required to support a section 1983 action. *See Brewster v. Nassau County*, 349 F. Supp. 2d 540, 546-47 (E.D.N.Y. 2004) (Legal Aid attorney); *Green v. Bartek*, No. 3:05-CV-1851, 2007 WL 4322780, at *2-3 (D. Conn. 2007) (attorney representing Green in a family court neglect petition). To the extent that the delay was attributable to the AG or the court, they would be protected by absolute immunity. *See Mireless v. Waco*, 502 U.S. 9, 9-10 (1991) (with minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions). Thus, any due process claim may be dismissed with prejudice.

## VII. **Statute of Limitations**

### A. **Legal Standards**

Federal courts borrow the state law personal injury statute of limitations period for purposes of filing section 1983 actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). In New York State, the relevant limitations period is three years. *Owens v.*

*Okure*, 488 U.S. 235, 250–51 (1989). *See* N.Y. Civ. Prac. L & R. § 214(5). Thus, unless the limitations period is tolled for some reason, a plaintiff must file his section 1983 civil rights action within three years of the accrual of each cause of action. Federal law, governs the question of when a section 1983 claim accrues. *Covington v. City of New York*, 171 F.3d 117, 121 (2d. Cir. 1999) (citing *Morse v. University of Vermont*, 973 F.2d 122, 125 (2d. Cir. 1992)). Generally, under federal law, a cause of action accrues when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (internal quotation marks omitted)). Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled. *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 1997).

### B. Application

In this case, even if the court were to find that there was a named defendant who plaintiff could add, his claims would likely be barred by the statute of limitations. Plaintiff complains about the application of MHL § 10.06(k). The application of that statute would have occurred after the probable cause determination to confine plaintiff pending trial. The probable cause hearing was held on September 25, 2009. Thus, any possible claim regarding the application of section 10.06(k) would have accrued on that date. Plaintiff's complaint in this action was signed on June 20, 2013 and filed on June 21, 2013. (Dkt. No. 1 at CM/ECF p.7). According to Justice Taddeo, plaintiff made a pro se motion for bail and to remove counsel on February 13, 2010. (Dkt. No. 18-1 at 56). Plaintiff would clearly have been aware of his possible claims at that time. Even

using February 13, 2010 as the date of accrual, plaintiff's federal case is still untimely.[18]

   **WHEREFORE**, based on the findings above, it is

   **RECOMMENDED**, that the defendants' motion to dismiss (Dkt. No. 18) be

**GRANTED**, and the complaint dismissed in its entirety **WITH PREJUDICE**.

   Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

fourteen (14) days within which to file written objections to the foregoing report.  Such

objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO**

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of*

*Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R.

Civ. P. 6(a), 6(e), 72.

Dated: May 8, 2014

Hon. Andrew T. Baxter
U.S. Magistrate Judge

---

[18] The court would also point out that Judge Taddeo specifically stated that, after the probable cause hearing on September 25, 2009, the trial was scheduled for January 11, 2010, after "further conferences" with the parties. (*Id.* at 55).  Thus, it appears that the trial was scheduled beyond the sixty-day time limit by the court, with the consent, or at least in consultation with, the parties.  The MHL provides that the court may extend any time period at the request, or on the consent of the inmate. MHL § 10.08(f).